IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Civil Action No. 08-____  (RLB) |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Bankruptcy Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket Nos. 18821, 18895, 18896**

## DEBTORS' BRIEF IN OPPOSITION TO ANDERSON MEMORIAL'S APPLICATION FOR APPEAL OF ORDER DENYING CLASS CERTIFICATION UNDER FED. R. BANKR. P. 7023

It is clear that certification of a putative class of asbestos property damage claimants would be utterly without merit and would completely undermine the Bar Date process established back in 2003. Adjudication of PD claims against Grace is mature. Virtually all PD claims have been resolved, through the special procedures available in bankruptcy court and through settlements. Virtually all of the claims filed by Anderson Memorial's counsel Speights & Runyan ("S&R") have been withdrawn or disallowed without appeal. Other PD claims were resolved through summary judgment and settlements, by dealing with statutes of limitation and lack of product identification through case management procedures. As a result, of the 4,000 originally-filed PD claims, only 74 remain, including 55 S&R claims.

And, this Court already has affirmed the appropriateness and breadth of Grace's Bar Date notice program. *Mission Towers v. Grace*, 2007 WL 4333817 (D. Del. Dec. 6, 2007). In doing so, this Court rejected the Motion to Appeal's core premise -- that the Bankruptcy Court erred in not certifying a class of purported claimants who "relied upon the Anderson class action and did not file individual proofs of claim" and "members of the purported class who did not receive actual notice of this bankruptcy case" (Motion at 15-16) -- and refused to unwind the Bar Date by allowing S&R to file unauthorized claims. *Id.* at *6, *8.

Certification of a property damage class therefore would take enormous steps backwards, not forward toward resolution of remaining issues and the closure that is needed in these Chapter 11 cases in light of Grace's settlement in April 2008 with the asbestos personal injury claimants. The Bankruptcy Court could not have said it better:

> The property damage issues have been litigated since 2002, starting with the bar date notice litigation, and it is time to put them to rest in the most efficient way possible. In this case, that course is not through a class proof of claim process which was sought in an untimely fashion despite a direct order of this court, which would defeat the bar date, to the detriment of the Debtors' estates and all other creditors, and which would effectively authorize S&R to file claims on behalf of those for whom it was determined to have had no authority. Mission Towers v. Grace, 2007 WL 4333817 (D. Del. 2007).

*In re W.R. Grace & Co., et al.*, 2008 WL 2245811, *5 (Bankr. D. Del. May 29, 2008).

The hard and extensive work done to resolve Asbestos PD claims should not be cast aside, and the delicately balanced prospect of a plan of reorganization agreed to by the Debtors, the current Asbestos PI claimants, future Asbestos PI claimants and equity holders should not be jeopardized. Engaging in a property damage class certification process which would create delays so late in the game is not in the best interests of any of the constituencies in this case. Ironically, even the asbestos property damage claimants who filed timely claims and reached settlements on those claims would be harmed by the delay in receiving the settlement payments. On the law and this record, the Bankruptcy Court correctly denied class certification, and there is no basis to allow an appeal.

## I.    Facts

### A.    Anderson Memorial

In 1992, S&R filed *Anderson Memorial Hospital v. W.R. Grace et al.*, in the South Carolina Court of Common Pleas, seeking certification of a nationwide class of private building owners. Motion for Leave to Appeal at 4. After the state court struck the non-residents' class claims under the state's "door-closing" statute, in 1996 S&R filed a second amended complaint

limited to buildings in South Carolina, which remains operative. In February 2001, the South

Carolina court granted an *ex parte* petition filed by S&R, conditionally certifying the South

Carolina class. Critically, the *ex parte* order was not only conditional on its face, but, as the

Bankruptcy Court has recognized, the South Carolina court specifically rejected any notion that a

final certification was inevitable. *In re W.R. Grace,* 2008 WL 2245811, *1.

The conditional order was then superceded by the state court's June 2001 final order

certifying a class of South Carolina building owners, which was entered *after* Grace's chapter 11

filing and therefore did not include Grace. *Id.* The text of the final Order shows and counsel for

Anderson has admitted (Bankr. Dkt. No. 13894, 11/20/06 Hrg. Tr. at 80) that the South Carolina

court's final certification order did not apply to Grace.

Thus, there has never been any Anderson Memorial class, of any kind, certified as to

Grace. 2008 WL 2245811, *1.

### B.    The Asbestos Property Damage Bar Date And Grace's Court-Approved $4 Million Notice Program.

On June 27, 2001, the Debtors filed their Bar Date Motion (Bankr. Dkt. No. 586) seeking

a claims bar date for all Asbestos PD claims. For the following ten months, the Debtors worked

with every official committee and the Court to craft the Bar Date Notice, the Bar Date Notice

Package and a comprehensive publication system (the "Notice Program"). Grace filed

successive versions of the Bar Date Motion; the Court considered multiple responses from the

official committees; and the details of the Notice Program and Notice Package were discussed at

several omnibus hearings. The Bankruptcy Court stated that the forms of notice were

comprehensive: "This is a very wide, very broad-based media program . . . It seems to me that

this is designed to cover the universe of plaintiffs who could be out there with property damage."

(Bankr. Dkt. No. 2057, 4/22/02 Hrg. Tr. at 97).

By order dated April 22, 2002 (the "Bar Date Order," Bankr Dkt. No. 1963), the

Bankruptcy Court approved the Notice Program, set March 31, 2003 as the Bar Date for PD

Claims and found that the Notice Program constituted legally sufficient notice to all unknown

claimants:

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown
> claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property
> Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on
> April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar
> Date. . .

*Id*. at 5.  At the request of the PD Committee, of which Dan Speights was and is a member, the

Bankruptcy Court abated "the requirement in the Bar Date Notice that counsel of record for

asbestos property damage claimants either (1) certify that they notified their clients of the bar

date by transmitting to them the proof of claim package, or (2) give names and addresses to

Grace so Grace could notify them directly." *In re W.R. Grace*, 2008 WL 2245811, at *2, citing

Bankr. Dkt. Nos. 2269, 2274, 2745, 2394, 2469 and 2503.

<u>Neither S&R nor Anderson Memorial Hospital nor anyone else</u> appealed the order

approving the Notice Program, which became final and represents law of the case.

### C.    Grace's Objections To S&R's Unauthorized Claims And Speights' Withdrawals.

S&R filed approximately 3,000 of the 4,000 PD claims that were filed in response to the

Notice Program and Bar Date.  In addition to filing class proofs of claim, S&R filed almost 800

individual claims on behalf of so-called *Anderson Memorial* out-of-state claimants and 59 claims

on behalf of so-called *Anderson Memorial* in-state claimants.  In 2005, Grace objected to S&R's

lack of authority from the individual claimants to file these so-called *Anderson Memorial* claims.

(Bankr. Dkt. Nos. 8640 and 9311).  In response, S&R withdrew approximately 1,500 claims.

(Bankr. Dkt. No. 10961).

The Bankruptcy Court then determined that S&R lacked authority to file such individual claims on behalf of purported *Anderson Memorial* class claimants, and the Court ordered S&R to withdraw an additional 552 out-of-state claims and 52 in-state so-called *Anderson Memorial* claims. (Bankr. Dkt. No. 11025, 10/31/05 Hrg. Tr. at 90). The Bankruptcy Court expunged these claims. (Bankr. Dkt. No. 11080). S&R did not appeal.

As a result of these withdrawals and expungements, only one South Carolina claim -- Anderson Memorial Hospital -- remains.

### D.    The Filing of Anderson Memorial's Class Certification Motion.

In October 22, 2005, over two and a half years after the Bar Date, S&R filed the Motion for Class Certification. Although its operative Second Amended Complaint in South Carolina sought a class only of claimants who owned South Carolina buildings, in this bankruptcy case, Anderson broadened its class definition to include non-South Carolina claimants:

> Anderson seeks to certify an opt-out class action on behalf of itself and the class of other property owners whose buildings were, are or will be contaminated with asbestos fibers released from asbestos-containing surfacing materials for which the Debtors are legally responsible including, but not limited to, those claims identified in Exhibit A. The class would explicitly exclude any building for which a property damage claim is currently pending in this bankruptcy not listed on Exhibit A.

(Bankr. Dkt. No. 10014, 10/21/05 Class Certification Motion at 2). The putative class excludes schools, colleges and certain government buildings, and claimants represented by counsel other than S&R. *See id.*; *see also* Bankr. Dkt. No. 16422, 7/5/07 Hrg. Tr. at 11, 176.

### E.    The Bankruptcy Court's Opinion.

On May 29, 2008, the Bankruptcy Court issued its Memorandum Opinion and Order of Court Denying with Prejudice Motion of Anderson Memorial Hospital for Class Certification. (Bankr. Dkt. No. 18821)  On June 9, 2008, Anderson Memorial filed its (i) notice of appeal and

(ii) Application for Appeal of Order Denying Class Certification Under Fed. R. Bankr. P. 7023.

(Bankr. Dkt. Nos. 18895 and 18896)

### F.    Current Status of PD Claims and Debtors' Bankruptcy Cases

In August 2006, the Bankruptcy Court entered a PD claims case management order that

called for discovery and adjudication of the Debtors' statute of limitations, product identification

and lack of hazard objections.  (Bankr. Dkt. No. 13120)  As a direct result of the ensuing

discovery and summary judgment motions, there are now only 74 active PD claims, 55 of which

are S&R claims (of which 53 are subject to pending summary judgment motions).[1]

## II.    Legal Standards

### A.    The Bankruptcy Court's Denial of Class Certification is Not A Final Order and Grounds Do Not Exist for Interlocutory Review.

#### 1.    The Opinion Denying Class Certification is Interlocutory.

There is no dispute that the Bankruptcy Court's denial of class certification, which did

not adjudicate any property damage claims, is not a final order.  Anderson Memorial does not

even try to assert that it is a final order, arguing instead for an interlocutory appeal under 28

U.S.C. § 158(a)(3) or permissive appeal under Fed. R. Civ. P. 23(f).

#### 2.    Grounds Do Not Exist for Permitting Interlocutory Review.

Section 158(a)(3) of the Judicial Code permits district courts to grant parties leave to

appeal from "interlocutory orders and decrees."  28 U.S.C. § 158(a)(3).  Anderson Memorial

suggests that this Court's decision whether to allow an appeal from an order denying class

certification should be governed by the standards of Fed. R. Civ. P. 23(f), which permits

interlocutory appeal of decisions granting or denying class certification at a court of appeals'

discretion:

---

[1] These 53 claims are for buildings located in Canada and are subject to Debtors' fully briefed and argued motion for summary judgment regarding Canadian limitations periods.  Bankr. Dkt. No. 14597.

A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 10 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

However, Rule 23(f)'s permissive appeal standards do not apply to District Court review of Bankruptcy Court decisions regarding class certification. District courts have applied the usual standards governing interlocutory appeals, not Rule 23(f), to appeals of class certification decisions from bankruptcy courts. *See, e.g., In re WorldCom, Inc.*, 2005 WL 1208527, *1 (S.D.N.Y. 2005) (applying interlocutory appeal requirements and denying motion for leave to appeal bankruptcy court denial of class certification). Nothing in the Bankruptcy Rules provides that Fed. R. Civ. P. 23(f) would govern an appeal from a bankruptcy court to a district court. Although the Third Circuit has not examined this issue, the Eleventh Circuit has held that Fed. R. Civ. P. 23(f) has *not* been incorporated into the Federal Rules of Bankruptcy Procedure, and, therefore, Fed. R. Civ. P. 23(f) does *not* apply to district court review of a bankruptcy court's class certification grant or denial. *Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241, 1246-47 (11th Cir. 2002)(holding that there is no statutory authority under §§ 1292(e) and 2072 for the incorporation of Rule 23(f) into the Bankruptcy Rules). While the Eleventh Circuit analyzed whether Rule 23(f) permits an appeal of a bankruptcy court class certification order to a circuit court of appeals (not to a district court), the reasoning applies with even more force to an appeal from a bankruptcy court to a district court: There is no statutory authority for incorporation of Rule 23(f) into the Bankruptcy Rules.

Thus, this Court should apply the usual standards employed by district courts within the Third Circuit for determining whether to grant leave to appeal an interlocutory order -- the standards set forth in 28 U.S.C. § 1292(b) governing interlocutory appeals from district courts to the circuit courts of appeals. *See In re Edison Bros. Stores, Inc.*, 1996 WL 363806, at *3 (D.

Del. June 27, 1996); *Dal-Tile Int'l, Inc. v. Color Tile, Inc.*, 203 B.R. 554, 557 (D. Del. 1996). A court entertains an interlocutory appeal under § 1292(b) only when the appellant establishes *exceptional* circumstances justifying a departure from the basic policy of postponing review until after entry of a final judgment. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (appellant has burden of persuading court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment")(citation omitted); *Edison Bros. Stores*, 1996 WL 363806, at *3 (same); *Dal-Tile*, 203 B.R. at 557 ("Additionally, a court will entertain an appeal under § 1292(b) only when an appellant demonstrates that 'exceptional circumstances justify departure from the basic policy of postponing review until after the entry of final judgment.'")

In addition to the requirement of demonstrating an exceptional circumstance, under § 1292(b) an interlocutory appeal is permitted only when the order at issue: "(1) involves a controlling question of law upon which there are (2) substantial grounds for difference of opinion, and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Edison Bros. Stores*, 1996 WL 363806, at *3; *Delaware and Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989).

Applying these standards, in Debtors' bankruptcy cases this Court denied a motion by a group of claimants for interlocutory review of a Bankruptcy Court order that did not adjudicate specific claims and did not involve exceptional circumstances or a controlling question of law. *See* Bankr. Dkt. Nos. 14014 and 14015 (denying Zonolite Attic Insulation Property Damage Claimants' Motion for Leave to Appeal the Bankruptcy Court's Order resolving motions for ZAI science summary judgment motions). This Court found that the Bankruptcy Court's opinion "may be read to undermine the viability of some aspects of the ZAI claims" and therefore "may significantly impede any progress toward achieving consensual resolution among the key

constituencies in the Debtors' bankruptcy," but that, even so, "this certainly falls short of exceptional circumstances to warrant review of an interlocutory order. Moreover, ZAI Claimants have not pointed out a controlling question of law." *In re W.R. Grace*, No. 07-MC-0005 RLB, 2007 WL 1074094, *1 (D. Del. March 26, 2007).

Here, leave to appeal should be denied under 28 U.S.C. § 158 because Anderson Memorial has not demonstrated the requirements for interlocutory review. Anderson Memorial has not even tried to demonstrate any "exceptional circumstances" or that an immediate appeal "will materially advance the ultimate termination of the litigation."

In addition, the appeal does not implicate any controlling question of law. A legal issue is "controlling," for purposes of determining the appropriateness of interlocutory appeal, if it would be reversible error on final appeal. *Delaware and Hudson Ry. Co.*, 96 B.R. at 473, citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir.), *cert. denied*, 419 U.S. 885 (1974). The only questions of law identified in the Motion are (1) whether class proofs of claim are permitted; and (2) whether a bankruptcy court can require a class representative to seek permission to file a class proof of claim prior to the bar date. (Motion at 16). These are not "controlling questions of law,"[2] because the Bankruptcy Court's opinion did not hinge on either issue. *See Delaware and Hudson Ry.*, 96 B.R. at 473 (finding that legal issue appellant asserted to be "controlling question" was not so, because bankruptcy court "does not rely on this language in forming its conclusion.") The Bankruptcy Court assumed, without deciding, that class proofs

---

[2] Debtors' recent Motion for Leave to Appeal the Bankruptcy Court's denial of Debtors' injunction request regarding the Libby Claimants' asbestos-related actions against the State of Montana is distinguishable because that appeal *does* involve a controlling question of law. As set forth by Debtors in their Motion, in finding that it did not have "related to subject matter jurisdiction" to expand the injunction, the Bankruptcy Court failed to follow the legal precedent in the same adversary proceeding as established by the Third Circuit in *In re W.R. Grace & Co. (Gerard v. W.R. Grace & Co.)*, 115 Fed. Appx. 565 (3rd Cir. 2004), wherein the injunction was affirmed as to an insurer in circumstances essentially identical to those present with the State of Montana. Motion of W. R. Grace for Leave to Appeal Order Denying Injunction, Adversary No. A-01-771, Adv. Dkt. No. 495, April 10, 2008, at p. 8.

of claim are allowed. And, although the Bankruptcy Court remarked that Anderson Memorial sought certification two years after the Bar Date and three years after the court ordered a motion to be filed, 2008 WL 2245811, *3, these observations did not form the basis of the Bankruptcy Court's rulings. The gravamen of the opinion is that (1) Anderson Memorial had not met Rule 23(a)'s numerosity requirement, *see* 2008 WL 2245811, at *2-*3, and (2) failed to show either (a) a risk of inconsistent adjudications, or (b) that Grace has engaged in conduct that would make class relief appropriate or (c) that a class action is a superior method for "the fair and efficient adjudication of the controversy," and therefore failed to satisfy Rule 23(b)'s requirements. *Id.* at *3-*5, quoting *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 67 (Bankr. D. Del. 2002).

Thus, the standards for an interlocutory appeal have not been and cannot be met, and the Motion for Leave to Appeal should be denied.

### 3.    Even If Rule 23(f)'s Standards Are Applied, Immediate Appeal is Not Warranted.

Even if Rule 23(f) is applied, leave to appeal must be denied. In applying Rule 23(f), while acknowledging that courts of appeal have wide latitude to accept or reject appeals of certification orders, the Third Circuit has recognized three situations in which a class certification decision may be reviewable, "if granting the appeal . . . would permit us to address: (1) the possible case-ending effect of an imprudent class certification decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling; or (3) facilitate development of the law on class certification." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3rd Cir. 2001). As set forth below, none of these factors is present.

Courts of appeal review a decision granting or denying class certification for abuse of discretion. *Id.*, citing *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3rd Cir. 2001); *see also Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3rd Cir. 2001)(same); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 136 (3rd Cir. 2000)(same). A decision granting or

denying class certification is an abuse it discretion only if it "'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Newton*, 259 F.3d at 165-66, quoting *In re General Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3rd Cir. 1995); *Johnston*, 265 F.3d at 183 (same). Here, the Bankruptcy Court did not abuse its discretion.

### III.    The Bankruptcy Court's Denial of Class Certification Was Correct.

#### A.    Bankruptcy Courts Have Certified Class Actions Only Sparingly.

While class certification is available, determining whether class treatment is appropriate in a particular case is firmly within the bankruptcy court's discretion. *Kaiser*, 278 B.R. at 62; *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007). To certify a class of claimants, a bankruptcy court must determine whether a class action "makes sense" and will advance the interests of the bankruptcy, including whether: (1) the class was certified pre-petition; (2) there was a bar date; and (3) certification will adversely affect the administration of the case. *Id.* at 654; *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22-24 (Bankr. E.D. Pa. 1995); *In re Jamesway Corp.*, 1997 WL 327105, *4 (Bankr. S.D.N.Y. June 12, 1997).

If certification fails to advance the bankruptcy's progress or is otherwise not appropriate under the circumstances, the Bankruptcy Court need look no further. *See In re American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988)(bankruptcy judges must "consider the features, which we have discussed, that may make class certification less desirable in bankruptcy than in ordinary civil litigation."); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("[B]ankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and . . . certification may be 'less desirable in bankruptcy than in ordinary civil litigation.'"), quoting *American Reserve*; *Sacred Heart*, 177 B.R. at 22 ("Even if [the requirements of Fed. R. Civ. P. Rule 23] are met, the bankruptcy court must weigh the issues

of whether it is appropriate to give the class members what may amount to an additional opportunity to meet an otherwise applicable bar date.").

Where the first two required elements -- pre-petition certification and a bar date -- do not favor certification, in reality the bankruptcy court has little discretion because the effect of allowing the class claim would be to violate due process, by treating claimants unequally, and to exceed the scope of the Rules Enabling Act, by allowing Rule 23 to create substantive rights that would not otherwise exist.  Here, the class was not certified pre-petition and there has been a bar date, a court-approved non-appealed Notice Program and extensive winnowing of PD claims. The Bankruptcy Court properly denied class certification on this basis alone.

And, even if Anderson Memorial could surmount the hurdles of a bar date and lack of a pre-petition certification, claimants must also satisfy the elements of Fed. R. Civ. P. 23, in the same manner as any other potential class in a federal court.  *Musicland*, 362 B.R. at 652; *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998).

Because all of these requirements can rarely be met, "the class proof of claim device may be utilized in appropriate contexts," but "such contexts should be chosen most sparingly." *Sacred Heart*, 177 B.R. at 22; *see also In re FirstPlus Fin., Inc.*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy context, class actions should be rare.").  Not surprisingly, therefore, bankruptcy courts are highly cautious about certifying classes, and rarely do so in mature bankruptcy proceedings.  *In re First Interregional*, on which S&R relies heavily, was not a mature case and is limited to its facts.  It was a securities case, and thus class certification was not surprising because there was no alternative.  2,000 identified claimants unrepresented by counsel had purchased lease interests from the broker-dealer debtor and filed claims as of the Bar Date, and the class certification motion was fully briefed within 13 months of the filing of the

12

chapter 11 case. *First Interregional*, 227 B.R. at 362-64. The records in *First Interregional* and Grace are not remotely similar.[3]

**B.    The Bankruptcy Court Correctly Found That Anderson Memorial Does Not Meet These Requirements.**

As the Bankruptcy Court found, Anderson Memorial's class certification motion fails to satisfy the factors unique to bankruptcy proceedings: the absence of a certified pre-petition class and the presence of a bar date are dispositive. And Rule 23's requirements have not been satisfied because of the minimal number of claims still at issue encompassed by the class definition and the fact that any common issues have already been addressed.

**1.    The Class Was Not Certified Pre-Petition.**

As described above, a primary consideration in whether to permit certification is whether the class was certified pre-petition. Here, it was not. As the Bankruptcy Court properly recognized, the February 2001 conditional certification did not become final as to Grace before Grace's April 2001 chapter 11 filing. *See In re W.R. Grace*, 2008 WL 2245811, *1; *see also* Bankr. Dkt. No. 16422, 7/5/07 Hrg. Tr. at 87-88. In granting the conditional certification, the state court "rejected any notion that a final certification was inevitable, and clarified that the action had no precedential value as to what the court would ultimately find, had absolutely no influential value, and was issued only under exigent circumstances." The state court's final certification order, issued after Grace's April 2001 chapter 11 filing, expressly did not apply to Grace because of the automatic stay in these bankruptcy cases. 2008 WL 2245811, *1; *see also*

---

[3] The rarity of certified classes in mature bankruptcy cases is demonstrated by the many courts that have denied class certification. *See, e.g., Musicland*, 362 B.R. at 657 (denying class certification); *In re Computer Learning Centers*, 344 B.R. 79, 94 (Bankr. E.D. Va. 2006) (denying motion to file class proof of claim); *In re Ephedra*, 329 B.R. 1; *In re Craft*, 321 B.R. 189 (Bankr. N.D. Tex. 2005)(striking class proof of claim); *In re FirstPlus*, 248 B.R. 60 (denying certification); *Jamesway*, 1997 WL 327105 (same); *Sacred Heart*, 177 B.R. 16 (same). This result is not surprising, " 'since the bankruptcy court has complete control over the bankrupt's estate, there really is little reason to fear multiple or repetitious litigation.' " *In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir. 1987), quoting 7A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1754, at 56 (1986).

Bankr. Dkt. No. 9546 at 6-9.  Thus, the Bankruptcy Court correctly found that as to Grace there

is no certification of any *Anderson Memorial* class of any kind.  *Id.*  As in *Sacred Heart* where

class certification was denied, here, "the putative class and its representatives have never been

certified as appropriate by a nonbankruptcy court."  177 B.R. at 23; *see also Jamesway*, 1997

WL 327105 at *10 (in the absence of pre-petition certification, class members lacked

"reasonable expectation" that they did not have to comply with the bar date).

### 2.    There Was A Bar Date and Court-Approved, Unappealed Notice Program.

The Motion for Leave to Appeal relies heavily on supposed inadequacies in the Bar Date

Notice.  But the appropriateness of the Bar Date Notice and Notice Program was decided --

finally -- in 2002, when the notice was issued, and was affirmed by this Court in its December

2007 decision on late authority issues.  *Mission Towers v. W. R. Grace*, 2007 WL 4333817.

These decisions are law of the case.

The Bankruptcy Court recognized that the Notice Program was extensive and that any

issues regarding notice to putative PD claimants cannot be re-examined several years later

because:  "I do not believe at this point it's appropriate to look outside the proofs of claim that

were filed -- proofs of claim that were filed because we had a bar date that I found to be

appropriate.  So the universe of claims is going to be the proofs of claim filed in the Court."

(Bankr. Dkt. No. 13572, 10/23/06 Hrg. Tr. at 67).  No one, including S&R, appealed the Notice

Program.  And, this Court has held that actual notice was given to property damage claimants

and publication notice was extensive.  *Mission Towers v. Grace,*  2007 WL 4333817, *7.  Thus,

as the Bankruptcy Court explained:

> A class action would provide certain claimants with the opportunity to file late
> claims despite the bar date and without having to establish excusable neglect
> pursuant to *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*,
> 507 U.S. 380, and would nullify the notice program which entailed substantial
> effort and expense.  Under the notice program actual notice was given to known

property damage claimants and publication notice was extensive. *See Mission Towers v. Grace*, 2007 WL 4333817 (D. Del. 2007)(court found notice under the notice program sufficient).

*In re W.R. Grace*, 2008 WL 2245811, *4.

In addition, both the Bankruptcy Court and this Court have recognized that the PD

Committee, including Dan Speights, prevented assurance of direct notice to their claimants:

> [T]he debtor had asked that the attorneys provide some certificate that indicated that they, in turn, had forwarded the proof of claim form and the notice on to their clients, and the -- the property damage committee balked at that, asserting that they were officers of the Court, they didn't have to do that, and they basically took great umbrage with that suggestion, and so, I didn't demand it. . . . That's the property damage committee on which Anderson sits.

Bankr. Dkt. No. 16422, 7/5/07 Tr. at 59-60; *see also Mission Towers v. Grace*, 2007 WL

4333817, *8 ("S&R purports to have had a fiduciary duty to file proofs of claim on Appellants'

behalf, yet argue they did not have an obligation to notify Appellants of the bar date and ensure

they received proper notice. The court rejects this argument of appellants.")

In these circumstances and in line with other bankruptcy courts, the Bankruptcy Court

properly did not permit nullification of the Bar Date and further recruitment of claimants or

"inclusion of claims that S&R has been adjudicated to have had no authority to file." 2008 WL

2245811, *5, citing *Mission Towers v. Grace*, 2007 WL 4333817; *see also Jamesway*, 1997 WL

327105, *4 (denying certification where only 243 of 800 employees filed timely claims alleging

violations of worker training laws, because certifying the class would have "effectively . . .

extend[ed] the Bar Date to putative class members who failed timely to file claims").

### 3.    Unwinding the Bar Date Program Would Violate Due Process and Exceed the Scope of the Rules Enabling Act.

Granting class certification here would not just supplement the Bar Date, as Anderson

Memorial tries to suggest in its Motion:  it would retroactively eradicate it.  Such backward-

looking alteration of the rules would be patently unfair to claimants who filed in a timely manner

and would create rather than resolve due process problems. *See Sacred Heart*, 177 B.R. at 23

("Tinkering with an established bar date may raise due process claims of parties who have timely

filed claims by originally-established bar dates, since it gives late filers a second bite at an apple

which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely

filer's share of a distribution.")

Due process requires notice that is "reasonably calculated, under all circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present

their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As

this Court has recognized in addressing claims filed by S&R without authority, to determine

legally-adequate notice for a bar date, bankruptcy law divides creditors into two groups. *Mission*

*Towers v. Grace*, 2007 WL 4333817, *6. "Known" creditors are entitled to actual notice of a

bar date; publication notice constitutes legally sufficient notice to "unknown" creditors.

*Chemetron Corp. v. Jones*, 72 F.3d 341, 344 (3rd Cir. 1995); *DePippo v. Kmart Corp.*, 335 B.R.

290, 296 (S.D.N.Y. 2005). In light of these principles and precedents, this Court has already

recognized the fallacy of Anderson Memorial's assertion that Grace should have sent Bar Date

Notices to all buildings -- not claimants, or even building owners, but *buildings* -- in which

Grace asbestos-containing surface treatment may have been installed many decades ago:

> [I]t is apparent that Appellants were not entitled to actual notice. Appellants state
> in their brief that Debtors' 'conceded that no effort had been made to identify
> asbestos property damage claimants from its sales records . . .' Debtors' records
> of buildings and building owners to whom their products were sold to decades
> ago does little to assist in identifying claimants with reasonably diligent effort.
> 'Reasonable diligence does not require . . .[a] debtor . . . to search out each
> conceivable or possible creditor and urge that person or entity to make a claim
> against it.'

*Mission Towers v. Grace*, 2007 WL 4333817, *8, citing *Chemetron*, 72 F.3d at 346; *see also*

*PacifiCorp and Vancott Bagley Cornwall & McCarthy v. W.R. Grace*, 2006 WL 2375371, *10

(D. Del. Aug. 16, 2006) (Buckwalter, J.)(where Grace had no direct relationship with late

claimants and "did not know the identities of those current and prior owners," the link between Debtors and potential claimants is so "highly attenuated" that the putative claimant is an unknown creditor and actual notice is not required).

S&R is estopped from demanding additional notice to building owners for another reason. To the extent that any of the proposed class members did not receive actual notice of the Bar Date, the Bankruptcy Court had already determined that S&R, rather than the Debtors, is responsible. S&R signed and filed individual PD claims for every single claimant on its list of potential claimants at Exhibit A to Anderson Memorial's October 2005 class certification motion (Bankr. Dkt. No. 10014), hundreds of which were then either withdrawn or disallowed by the Bankruptcy Court. Thus, as this Court has recognized, "It was made clear to claimants' attorneys, including Daniel Speights of S&R, that they had the responsibility to serve their clients and would best know of clients who might be interested in filing property damage claims." *Mission Towers v. Grace*, 2007 WL 4333817, *7. Any lack of notice cannot be charged against the Debtors and used as an excuse for class certification.

The Federal Rules of Civil and Bankruptcy Procedure do not afford claimants any rights that they do not otherwise have. The Rules Enabling Act precludes the use of class certification to allow a law firm to resuscitate claims that were filed with no authority and with no support or claims that have been dismissed or withdrawn based on statutes of limitation or repose or lack of product identification. *See Standard Metals*, 817 F.2d at 632 ("Class action procedures can be employed in a bankruptcy proceeding only to consolidate claims that have already been properly filed."); *Sacred Heart*, 177 B.R. at 24; *In re First Alliance Mortgage Co.*, 269 B.R. 428, 439 (C.D. Cal. 2001), *citing* 28 U.S.C. § 2075 ("The Bankruptcy Rules Enabling Act gives the Supreme Court authority to promulgate rules of procedure in the bankruptcy courts, provided that they do not 'abridge, enlarge, or modify any substantive right.'")

The Supreme Court has said it best: "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *see also Chevron USA, Inc. v. Vermilion Parish Sch. Bd.*, 215 F.R.D. 511, 515-16 (W.D. La. 2003) ("[T]o allow the certification of a class action under the facts of this case would result in Rule 23 supplying a substantive right where one is now lacking, and such a result is prohibited by the Rules Enabling Act."); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 64 F.R.D. 432, 434-35 (S.D.N.Y. 1974)("Rule 23, of course, may not 'abridge, enlarge or modify any substantive right'"); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973)("[T]he Federal Rules of Civil Procedure do not create substantive rights which do not otherwise exist.").

### 4.    Class Certification Would Adversely Affect Administration of the Debtors' Bankruptcy Cases.

Based upon the two factors addressed above -- absence of a certified pre-petition class and presence of a bar date -- the Bankruptcy Court's Opinion was correct. But in addition, denial of certification was correct because certification would adversely affect administration of Grace's bankruptcy cases. Class members would have to be afforded the opportunity to opt out, and the opt-out notification would cause confusion among putative class members, as the Bankruptcy Court properly recognized:

> [A] claimant who did not file a timely claim but who would be a member of the class if certified could opt out of the class and then assert an independent late claim, thereby effecting another end run around the bar date. In that respect, class certification would adversely affect the bankruptcy proceedings by permitting those who missed the bar date and who received at least publication notice to interpose claims into this case, without establishing the excusable neglect standard expressed in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).

2008 WL 2245811, *5.

18

Other problems would flow.  An appeal would paralyze these entire bankruptcy cases.  If the class were certified and sustained on appeal, the Bankruptcy Court would have to decide how its prior substantive rulings on PD claims apply to the class members.  And, plan negotiations would be nearly impossible, because no one would know the composition of the class.

C.    **The Bankruptcy Court Properly Found That The Proposed Class Does Not Meet Rule 23's Requirements.**

The Bankruptcy Court also properly found that the potential class does not meet the criteria of Fed. R. Civ. P. 23.

1.    **The Bankruptcy Court Properly Found That Proposed Class Does Not Meet Rule 23(a)'s Numerosity Requirement.**

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  That is not the case here.  In response to the Notice and Bar Date, all timely individual claims have already been filed.  While nearly 4,000 claims were filed, only 55 S&R claims remain, and 53 of them are subject to the Debtors' pending Canadian limitations periods motion.  Bankr. Dkt. No. 14597.  On this record, the Bankruptcy Court properly held that the numerosity requirement is not met.

2.    **Rule 23's Other Requirement Also Have Not Been Met.**

While Anderson Memorial's Motion does not argue that the class meets Rule 23(a)'s other requirements, lest there be any doubt, the other requirements cannot be met.

In its superiority discussion, the Bankruptcy Court found that "a class action format is not conducive to resolution of issues such as whether a Grace product is in place in any claimant's building or whether a specific state's statute of limitations has run."  2008 WL 2245811, *4.  Indeed, in a bankruptcy case, a class action is rarely "superior to other available methods for the fair and efficient adjudication of the controversy" simply because the very

purpose of many bankruptcy procedures is to consolidate and efficiently dispose of large number of claims. *In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992).

Here, PD claims have been thoroughly litigated and extensively winnowed through the objection process and the CMO, and all but two of the remaining S&R claims are subject to dispositive motions. On this record, a class action would not only be inferior to the existing litigation as a method for dealing with the remaining PD claims, *see In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), but the existing litigation specifically addressed common issues. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019-1021 (7th Cir. 2002).

And, as the Bankruptcy Court found, beyond not being a superior method for dealing with the PD claims here, certifying a class would move these cases *backward* by nullifying the Bar Date and creating a group of creditors that is unknown, and largely unknowable, in its size and complexity, raising due process concerns and questions of unfairness to creditors who have already filed claims in conformity with the original Bar Date. 2008 WL 2245811, *5. The delays and uncertainties inherent in this scheme are manifest. In short, there is *nothing* to be gained here by proceeding as a class action.

*[Remainder of Page Intentionally Left Blank]*

## IV.    Conclusion

Anderson Memorial has not met the criteria for either a Rule 23(f) permissive appeal or

an interlocutory appeal under 28 U.S.C. § 158(a)(3).  Appeal of the denial of Anderson

Memorial's certification motion would unwind the Bar Date and not advance the Debtors'

bankruptcy towards conclusion.  The Bankruptcy Court did not abuse its discretion in so finding,

and this Court should deny the Motion for Leave to Appeal.


Dated:  June 19, 2008

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession