# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDERSON MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Appellants, | ) | **1:08-mc-00118-RLB** |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. GRACE & CO., et al.[1], | ) | DE Bankr. Case No. 01-01139 (JKF) |
| | ) | DE Bankr. Appeal No. 08-AP-39 |
| Appellees. | ) | |
| | ) | **Re: Appeal D.I. 1** |

## MOTION OF ANDERSON MEMORIAL HOSPITAL
### FOR LEAVE TO FILE REPLY IN SUPPORT OF ITS APPLICATION FOR APPEAL OF ORDER DENYING CLASS CERTIFICATION UNDER FED. R. BANKR. P. 7023

Appellant Anderson Memorial Hospital ("Anderson") moves this Court for leave to file a reply in support of its Application for Appeal of Order Denying Class Certification under Fed. R. Bankr. P. 7023 (the "Application for Appeal").

1.    On June 9, 2008, Anderson filed the Application for Appeal. The above-captioned debtors ("Grace") filed its response to the Application for Appeal (the "Grace Opposition") on June 19, 2008 (Appeal D.I. 2).

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.      Grace argues in its opposition that Anderson has not sought to appeal as of right. Grace also argues that the standard for adjudicating the Application is provided by 28 U.S.C. § 1292(b) which applies to interlocutory appeals *from the District Court to the Court of Appeals*. However, as admitted by Grace itself in the proceedings before the Bankruptcy Court, Fed. R. Civ. P. 23(f) contains the appropriate standard.  At a minimum, the standard is provided under 28 U.S.C. § 158(a)(3), the provision governing interlocutory appeals *from the Bankruptcy Court to the District Court.*

3.      Anderson believes that the reply attached hereto as Exhibit "A" (the "Reply") would assist the Court in addressing the arguments set forth in the Grace Opposition particularly as to the critical issue of the standard of review on appeal.

4.      Preliminarily, Local District Court Rule ("LDR") 7.1.2(b) governing motion practice, allows a party to file a reply in support of a motion within five business days of service of respondent's opposition.   While the time to file a reply under LDR 7.1.2 has admittedly expired, as Anderson informed the Court before the expiration of that period, there has been a recent death of a family member of Anderson's counsel.  Under these circumstances, Anderson submits that an extension of time to file a reply be permitted under Fed. R. Bankr. P. 9006(b) and/or LDR 16.4.

5.      The Federal Rule of Bankruptcy Procedure applicable to motions in appeals, Fed. R. Bankr. P. 8011, also contemplates the right to file a reply in the caption to subpart (a), which states "(a) Content of Motion; Response; Reply."  Furthermore, according to the committee notes, Rule 8011(a) is modeled after Fed. R. App. P. 27(a), which permits the filing of a reply within five business days of service of a response.  Fed. R. App. P. 27(a)(4).   Curiously,

however, the text of Fed. R. Bankr. P. 8011(a) does not actually address the timing for filing a reply; that presumably was an unintentional oversight by the drafters.

6.      Finally, while the specific rule governing motions for leave to appeal under 28 U.S.C. § 158(a)(3), Fed. R. Bankr. P. 8003, does not explicitly provide for replies, it does not explicitly prohibit replies either.

7.      Accordingly, to the extent that Anderson is required to seek leave to file a reply, it does so by this motion.

8.      Pursuant to L.D.R. 16.4, undersigned counsel hereby certifies that he has submitted a copy of this request to Anderson.

WHEREFORE, Anderson respectfully requests that the Court enter an Order in the form attached granting leave to file the Reply in response to the Grace Opposition.

DATED:  July 7, 2008

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:      (302) 654-0248
Facsimile:      (302) 654-0728
E-mail:          loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC  29924
Telephone:      (803) 943-4444
Facsimile: (803) 943-4599

*Counsel for Anderson Memorial Hospital*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANDERSON MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Appellants, | ) | **1:08-mc-00118-RLB** |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | DE Bankr. Case No. 01-01139 (JKF) |
| | ) | DE Bankr. Appeal No. 08-AP-39 |
| Appellees. | ) | |

**APPELLANT'S REPLY MEMORANDUM IN SUPPORT OF ITS APPLICATION
FOR INTERLOCUTORY APPEAL UNDER FED. R. BANKR. P. RULE 7023**

Anderson Memorial Hospital respectfully submits this Reply Memorandum in Support of its Application under Rule 23(f), FRCP, Rules 7023, 8001, and 9014 of the Bankruptcy Rules and 28 U.S.C.§158 for an immediate appeal of the Bankruptcy Court's May 29, 2008 Order Denying Class Certification. [B.Dk. 18821]. Anderson submits that oral argument would assist the Court in its consideration of this issue.

**I.     Argument**

Recognizing that this appeal is both appropriate under the circumstances and meritorious, Grace has resorted distortion and hypocrisy to prevent this appeal from going forward. There is little doubt cast by Grace that the factors relevant to this Court's inquiry all favor an appeal. *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 164 (3d Cir. 2001).

**A.     The Bankruptcy Court's Order is a Final Order**

Despite Grace's suggestion to the contrary, Anderson contends that the Bankruptcy Court's denial of certification is a final order that is subject to immediate appeal. (*See, Anderson Memorial Hospital's Application under Rule 7023 for Appeal*, ¶¶ 1, 29, 32). Indeed, the Order clearly provides that it is entered "with prejudice." (B.Dk. 18821). The Bankruptcy Court's

entry of this order, "with prejudice" effectively terminates the litigation and forecloses any chance of presenting in this bankruptcy case a property damage claim for hundreds if not thousands of absent class members whose claims were encompassed in Claim Nos. 9911 and 9914, the two class proofs of claim pending in the Bankruptcy Court.[1]

Moreover, the Bankruptcy Court specifically recognized at an October 31, 2005 hearing that the voluntary withdrawal of individual claims of absent class members filed by Speights & Runyan was **without prejudice** to those claimants participating in bankruptcy *vis-a-vis* Anderson's class proof of claim.[2]    Accordingly, the Bankruptcy Court's ultimate refusal to certify a class ends the litigation for those absent class members.

In *In re: Jove Engineering, Inc.*, 92 F.3d 1539, 1548 (11th Cir. 1996), the court reasoned:

> The statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation.  This accommodative approach is vital in the context of bankruptcy.  Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed.  While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible.  Finality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole.  Any order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable.

*See also, In re: Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (holding courts "take a more liberal view of what constitutes a separate dispute for purposes of appeal in bankruptcy cases").

---

[1] Anderson filed an individual property damage claim which is still pending before the Bankruptcy Court.

[2] After counsel for Anderson agreed to voluntarily withdraw all individual claims for class members with no express authority [B.Dk. 11025, pp. 86-87], the Bankruptcy Court agreed that the withdrawals would be without prejudice to the Court's consideration of class certification that would include those claims. [Id, p. 90]; [Id, p. 92] ("if you've been given a bar date and you have not acted to file a proof of claim, the fact that somebody else has filed a proof of claim for a class isn't going to get you into it because you've denied that you have a claim by not filing it, I think. But that's the issue that I think you need to brief for me because I am not sure what the consequence of not filing an individual claim, but potentially being part of the class is.  And I am not going to jeopardize claimants who may have claims against the debtor without having that issue briefed and an opportunity to rule on it.")

Accordingly, the Order is immediately appealable under Rule 8001, FRBP and 28 U.S.C. §158(a)(1) because it finally disposes of all issues associated with those proofs of claim.[3]

### B.    The Hypocrisy of Grace's Current Argument

Now that it is convenient and expeditious for it to do so, Grace argues to this Court that Rule 23(f), FRCP is inapplicable to bankruptcy proceedings and that review of class certification orders should be delayed until final judgment. This position contradicts Grace's prior arguments to the Bankruptcy Court – arguments that convinced the Bankruptcy Court to postpone considering the propriety of property damage class actions until after the bar date had passed.

The issue of property damage class actions was first thrust into this bankruptcy when Grace first sought a Case Management Order and Bar date for all claims. [B.Dk. 586]. On February 12, 2002, Grace filed a Revised Case Management Motion providing for the

---

[3] Even if this appeal were interlocutory, however, Grace's suggestions that (1) Rule 23(f), FRCP is not applicable to bankruptcy courts and (2) that this appeal should be viewed under the more stringent standards of 28 U.S.C. §1292(b) are wrong as made clear by Grace's own citation of *Chrysler Financial Corporation v. Powe*, 312 F.3d 1241 (11th Cir. 2002). While *Powe* did find that Rule 23(f), FRCP was not applicable to the Bankruptcy Rules, it did so because the appellant had petitioned the *Circuit Court* for direct review of a certification order issued by the *Bankruptcy Court*. The Eleventh Circuit properly found that the 28 U.S.C. 158 established the correct jurisdictional court to consider appellate review of the Bankruptcy Court's certification order. *Id*, p. 1245. More importantly, the Eleventh Circuit reached this decision, in part, specifically because 28 U.S.C. §158(a) does not shackle the district court with the §1292(b)'s stringent requirements when reviewing class certification orders. The Court stated:

> Rule 23(f) makes available an avenue of permissive appeal from a district court's class certification order in order to avoid the §1292(b) requirements that "the district court certify the certification ruling for appeal," or that district court find that the matter "involve[s] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See, Fed.R.Civ.P. 23(f) Advisory Committee's Note, 1998 Amendments.* However, the §1292(b) requirements need not be satisfied when an interlocutory appeal is taken from the bankruptcy court to the district court. In such a case, the district court's discretion to entertain an interlocutory appeal from the bankruptcy court is analogous to the court of appeals' discretion to entertain a Rule 23(f) appeal from the district court. *See, 28 U.S.C. §158(a)*. Thus, an appellate avenue to the district court free from the constraints of §1292(b) already exists for a bankruptcy judge's class certification order. Nothing in Rule 23(f) suggests that a bankruptcy appeal to the district court would be inadequate, or that an appeal to the court of appeals should trump the district court appellate jurisdiction over bankruptcy cases. In sum, the appellate avenue addressed by Rule 23(f) is already available to petitioners through an interlocutory appeal to the district court.

*Id.*, pp. 1245-46. Even if this appeal were interlocutory, the correct standard is Rule 23(f) – not §1292(b).

disposition of all asbestos property damage claims [B.Dk. 1664]. As a foundation to its proposed

resolution of property damage claims, Grace renewed its request for a property damage "Bar

Date." [Id., at 3]. Grace also asked for approval of its proposed Bar Date Notice. The proposed

Bar Date Notice specifically prohibited class proofs of claim, in spite of the fact that the

*Anderson* state class (and at least two others) had been certified pre-petition. Further, Grace

sought to inform claimants in the notice that they **could not rely on class actions** to protect their

rights in the bankruptcy. Specifically, Grace included the following (with emphasis in the

original):

### 7.    CLASS ACTION PROOFS OF CLAIM

Several class action lawsuits . . . involving Asbestos Property Damage Claims,
Zonolite Attic Insulation Claims, or other claims have been initiated against the
Debtors. Certification of classes have been requested and/or occurred in the
following matters: . . (10) *Anderson Memorial Hospital, et al. v. W.R. Grace &
Co.*, Case No. 92-CP-25-279 (Ct of Common Pleas, Hampton Co. S.C.) . . .

**If you are a member of any of the classes which hold Claims against the
Debtors, including but not limited to the classes referred to in the Class
Actions outlined above, you must file an INDIVIDUAL proof of claim before
the applicable Bar Date if you intend to assert a claim. Please take notice
that class proofs of claim will not be allowed and you may not rely on any
such class proof of claim. Unless you file an individual proof of claim before
the applicable Bar Date, you will be forever barred from asserting a claim
against the Debtors.**

[B.Dk. 1664, p. 7].

Three days later, Grace argued that "class certification can and should be dealt with down

the road, after the claims have come in." [B.Dk. 1667]. Grace also argued that the Third Circuit

had not had the opportunity to address and should not adopt *In re: American Reserve*, , 840 F.2d

487, n. 3 (7th Cir.1987). [Id, pp. 4-7].

On February 25, 2002, the Court held a hearing on Grace's Revised Motion for Case

Management Order. The Court told the parties early on that it wanted to send out a property

damage Bar Notice, and that it would decide later how to deal with the asbestos property damage claims once it got the basic information from the proofs of claim. [B.Dk. 1793, pp. 60-61].

Near the end of the February hearing, the Property Damage Committee's counsel (Mr. Baena) pointed out that Grace's proposed Proof of Claim was not designed to be used for a class proof of claim. [Id, p. 96]. Of course, at that time, Grace's proposed Bar Date Notice prohibited class proofs of claim altogether. The Bankruptcy Court agreed and noted that "it seems to me that the process that Judge Gambardella followed" in *In re: First Interregional* "makes good sense" and is a "very efficient process. [Id, p. 97]. The Court explained that – without "making rulings," and "just talking in general terms" – "I think there is some benefit to using that class process," and it "may be appropriate in this case." [Id, pp. 97-98].

In response to these comments, Grace's counsel argued:

MR. BERNICK: . . . The question that I'm really raising today is this. Which is take up the class proof of claim. I think that actually the way that it was done in her case is pretty much what I'm going to say. She set the bar date. All of the claims came in. All of the claims -- individual claims as well as the class proof of claims came in. And she then took up the question -- and this is what we propose, I believe, in our papers, and what I'll reiterate here today -- we propose that after the bar date passes and you have the individual claims as well as having the proposed class proof of claim, you then take up the question of whether to allow the individual -- allow the class proof of claims be used as the claim form in the case.

And the advantage of that is that you will have a piece of information that's very critical, which is how many individuals have actually come out and said, "I want to be there." So you'll know what truly numerosity is. And you will have information with respect to those individuals that will be very central to the question of whether you can even certify the class under Rule 23. Typically what happens in a Rule 23 certification is you have individual representatives. And you take discovery to elicit facts about, you know, predominance and individuality claims. Here, if you make -- you set the bar date and the individual Claimants come forward, you will have that information. You will know how many real Claimants are out there. And you can take up the question that was specifically identified in the <u>American Reserve</u> decision, the 7th Circuit decision. Remember at the very back end of the case the decision's remanded. And it's remanded so that the Bankruptcy Court can determine whether, in fact, the whole

class mechanism is even necessary or whether the same thing could be achieved by having individuals file their claim and then package them up as a class, or package them up as a group.

. . . . **What we would strenuously object to is the idea that pending a determination of class proof of claim, that the obligation of individuals to step forward and file a claim by the bar date somehow be lost. If you do that, not only do you lose the critical information, but you put us on a track that is gonna go forever. Why? Because if you certify that class, it's subject to interlocutory appeal.** We can't go forward with dealing with the individual claims in the case. And at the end of the day we only learn who's the real Claimant when it's all over and people have shown up.

[Id, pp. 103-105] (emphasis supplied)

This matter was carried over for further argument at the March 18, 2002 Omnibus Hearing. At this hearing, Grace's counsel was even more emphatic about Grace's appellate rights in the event the Bankruptcy Court permitted some form of property damage class.

MR. BERNICK: Okay. You then get to the question of because of the huge size of this class and the impact that it has on the case, the debtor would have absolutely no choice but to seek interlocutory review under 23(f) about whether that was an appropriate certification or not. Just the process of seeking interlocutory review, first to Judge Wolin and then potentially to the Third Circuit, **which we would have the right to do under 23(f)**, you're talking about a huge period of time elapsing.

[B.Dk. 1912, p. 60] (emphasis supplied). Grace's counsel later argued:

MR. BERNICK: Your Honor, it is not a threat, it's a reality. If that class proceeds here, that class is incorporated here. We would have to appeal that.
Your Honor could not bring that class in and simply incorporate the certification, we have to approve that certification. Under Rule 9014, you then have to apply Rule 23, Seventh Circuit, <u>American Reserve</u> case specifically says if there's a discretionary analysis that has to be done or Rule 23 can be used, you have to determine what the impact on the bankruptcy is going to be.

The impact on that bankruptcy would be unmistakable if we would have to take on that class, and we believe we're perfectly entitled to and that we'd be correct in doing so.

[Id, pp. 99-100]. Grace then argued:

MR. BERNICK: He left out just one little bit, which is that that whole idea that is 7023 is available at a -- at any stage on the language no matter what --

THE COURT: Yes.

MR. BERNICK: It [*In re: American Reserve*] has not yet been adopted by the Third Circuit, which is all the more reason why ultimately -- well, and particularly in this kind of context, **ultimately it might have to go up**. But I think that if they were to file a proof of claim, they're always entitled to -- safe to file a proof of claim, we can't stop them from doing it. I think that Peter is, in fact, right about that.

[Id, pp. 105-106] (emphasis supplied).

Grace's counsel also stated:

Mr. Bernick: Your Honor, if its not a threat, it's a reality. If that class proceeds here, that class is incorporated here. We would have to appeal that.

Your Honor could not bring that class in and simply incorporate the certification, we have to approve that certification. Under Rule 9014, you then have to apply Rule 23, Seventh Circuit *American Reserve* case specifically says if there's a discretionary analysis that has to be done or Rule 23 can be used, you have to determine what the impact on the bankruptcy is going to be. The impact on that bankruptcy would be unmistakable if we would have to take on that class, and we believe we're perfectly entitled to and that we'd be correct in doing so.  . . . And, you know, the line in the sand really is class. And I say that again, not by saying, oh, we're going to just mess up the sandbox. It's just – it's the economic reality of the ramifications of that class certification.

[Id, pp. 100-102].

At the close of the March hearing, the Bankruptcy Court was contemplating an approach that would permit anyone to file a class proof of claim, but defer determination of the merits of class certification. It was then proposed that the Bankruptcy Court lift the stay and allow pre-certified classes to proceed to determine property damage liability. When the matter was next heard, Grace again stressed its right and intent to appeal any adverse class certification decision.

MR. BERNICK: . . .What would happen if we went forward with their proposal? It's just more delay. If Your Honor were to lift the stay and to allow that case to proceed here, we would then have an appeal on whether the lift stay procedure was appropriate. We would then have an appeal on whether Rule 23 had been

followed. We would then have an appeal on whether 9014 applied and if so, whether the discretionary factors, how they would cut in this case.

[B.Dk. 2057, p. 19]. Counsel for one of the pre-certified class action then responded in a way that made it clear to all that the Court's ultimate resolution of this matter was made specifically avoid the delay associated with Grace's threatened appeals class certification matters:

> MR. SCOTT: And the only -- what I'm telling the Court is that the only way that there will be parties before this Court without a complicated Appellate process is through a lifting of stay with regard to cases that are pending because a premature and improper filing of a proof of a claim on behalf of individuals will result in a motion for certification of those classes before this Court and whatever the outcome of that issue, which this Court need not even address, will be appealed. We know that because Grace has made that clear from its last hearing. We are trying to put the Court in a position where it doesn't have to address the certification issue.

(Id., p. 28). Grace then reiterated its position regarding early consideration of any class action:

> MR. BERNICK: Right. I'm not proposing it. What Mr. Lockwood was saying is that there ought to be some record that there is a request to have class treatment of this matter and I think that that record is already there because there have been, gee I don't know, four different rounds of briefs filed to that effect. The real issue on what basis is the issue litigated at the turn of the year? That do you do with that determination? And where we were going last time, we're I think still going today, is that if you use these individual test cases, you can decide the science. We know who the claimants are. And we know really that the only people who are bound are those particular claimants. At that point you can then decide what you want to do to, as I say, write large whatever it is that you've learned from that proceeding. You can take then up the question of whether there ought to be a certified class proof of claim. You can take up the question of what to do at the adversary proceeding. **As soon as you take either one of those things, the class claim or the adversary proceeding and make it actually part of this hearing that's going to take place, then you have to follow all of the associated rules and that I think gets us back into the world where we're going to have appeals up and down because it's essentially -- it is, in fact, a class determination. And that's a very different kettle of fish.**

[Id., pp. 57-58]. Ultimately, and as explained in more detail below, the Bankruptcy Court agreed to defer class determinations until after the claims bar date had passed. The Bankruptcy Court issued a Bar Date Order that contained no prohibition against class proofs of claim [B.Dk. 1963],

thus removing the notice and prohibition that the Debtors had originally sought. [See, B.Dk. 1664, ¶7]. There can be little doubt that the Bankruptcy Court's reasoning was partially motivated by the Debtors' continued insistence of its right to appeal any class determination deemed adverse by the Debtors. Having obtained a class ruling on this basis, Grace should not now be heard to suggest that Anderson's appeal is interlocutory and should be deferred until after plan confirmation. The denial of class certification is no less important to the Anderson class members than the granting of class certification would have been to Grace.

Were Grace to prevail in its hypocritical position, it would undoubtedly later attempt to foreclose appellate review of the class certification order under the guise of equitable mootness. *See e.g., In re: Continental Airlines,* 91 F.3d 553, 558-9 (3d Cir. 1996). The time for this appeal is now, or the class members risk losing the right of appeal forever. *See, Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468-69, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (establishing the collateral order doctrine allowing appeals of orders prior to the final judgment where (1) the order conclusively determines the disputed question, (2) resolves an important issue separate from the merits, and (3) is effectively unreviewable on appeal from a final judgment).

### C.    The Bankruptcy Court's Order is Based upon Factual Error

As Grace so eagerly points out in its Response, the Bankruptcy Court's Certification Order specifically finds that

> The property damage issues have been litigated since 2002, starting with the bar date notice litigation, and it is time to put them to rest in the most efficient way possible. In this case, that course is not through a class proof of claim process **which was sought in an untimely fashion despite a direct order of this court,** which would defeat the bar date, to the detriment of the Debtors' estates and all other creditors, and which would effectively authorize S&R to file claims on behalf of those for whom it was determined to have had no authority. *Mission Towers v. Grace,* 2007 WL 4333817 (D.Del. 2007).

*In re: W. R. Grace & Co., et al.,* 2008 WL 2245811, p. 5 (Bankr.D.Del.); (Grace's Brief in

Opposition, p. 2) (emphasis supplied). This finding that the Bankruptcy Court directly ordered

Anderson to seek permission before the bar date before filing a class proof of claim is simply

wrong, and was made based upon Grace's incomplete citation of the complex record.

The only Order on the Bar Date Motion was entered on April 22, 2002, in which the

Bankruptcy Court did **not** require a claimant to get permission to file a class. There is no

question that at the February 25, 2002 Omnibus hearing, the Bankruptcy Court stated:

> well, I think with respect to the property damage claims, not the Zonolite issues,
> I'm not sure it's going to make a difference. Because we need a proof of claim
> that's going to identify the basics that I've already put on the record. That's what
> I'm going to rule. I hope you folks will be able to find something that is
> acceptable to all of you in terms of the format. But that's what I think this case
> needs. I don't expect it to be a massive undertaking. I do expect it to provide
> essential information. So let's get that far. Let's get a proof of claim together. If
> you file a Motion to have a class proof of claim filed at some point, it'll get
> scheduled and I'll hear it. Unless and until I get that motion there will be no class
> proofs of claim, because I think that's the way I need to get it raised.

[B.Dk. 1793, pp. 109-110].

However, the Bankruptcy Court's written Order (the only written order addressing the

merits of Grace's Motion for Case Management Order and Request for a Bar Date), contained no

such requirement or prohibition. It is the Court's written Order, not the Court's comment during

argument at an earlier hearing, that must govern. *Murdaugh Volkswagen, Inc. v. First Nat. Bank

of South Carolina,* 741 F.2d 41, 44 (4th Cir. 1984), *cited in, New Castle County v. Hartford Acc.

and Indem. Co.,* 933 F.2d 1162, 1204 (3d Cir. 1991), *rev'd on other grounds,* 970 F.2d 1267 (3d

Cir. 1992) ("Courts must speak by orders and judgments, not by opinions, whether written or

oral, or by chance observations or expressed intentions made by courts during, before or after

trial, or during argument. When the terms of a judgment conflict with either a written or oral

opinion or observation, the judgment must govern.").

Moreover, it is clear that the Bankruptcy Court later changed its thinking on this issue during the next two hearings and in light of the extensive briefs submitted. When the Court's statement at the February 25, 2002 hearing is put into the proper context of the additional hearings and briefing that occurred, it becomes clear that the finding that it had directly ordered Anderson to request permission to file a class proof of claim, as cited by Grace, is simply wrong.

First, after the Bankruptcy Court discussed its thinking at the initial hearing, it did not rule. The Bar Date Motion was continued to the March and later the April omnibus hearings.[4] Only after three hearings and extensive additional arguments did the Court issue its Bar Order.

Second, at the very hearing in which the Bankruptcy Court expressed its thoughts that a motion for permission to file a class proof of claim was required, the Court also agreed with counsel for the PD committee that if such a requirement was to be imposed, notice of that decision must be provided. The transcript of the February 25, 2002 hearing reflects:

Mr. Baena: We-

The Court: So until I get it, all issues are preserved. There are no class proofs of claim until I get through an appropriate motion process.

Mr. Baena: We need to give notice of that-

The Court: Yes.

Mr. Baena: And to each of those people who might have the right to file a class-

The Court: Well-

Mr. Baena: Proof of claim

The Court: That's the other problem.

Mr. Baena: To the class reps

---

[4] *See,* Amended Notice of Agenda of Matters Scheduled for Hearing on February 25, 2001 [B.Dk. 1714]; Amended Notice of Agenda of Matters Scheduled for Hearing on March 18, 2002 [B.Dk. 1820]; Amended Notice of Matters Scheduled for Hearing on April 22, 2002 [B.Dk. 1939].

The Court: Oh, the class reps.

Mr. Baena: or the putative class reps. We need to give them notice of that.
[B.Dk. 1793, p. 108].

In spite of this acknowledgment by the Bankruptcy Court that appropriate notice was necessary, the Debtors' revised bar date notice contained no such notice. [B.Dks. 1960, 1963]. Moreover, written notice was necessary because such a requirement would have been a departure from established case law and the Rules of Bankruptcy Procedure. *In re: American Reserve*, 840 F.2d 487 (7th Cir. 1987); *In re: Charter Company*, 876 F.2d 866, 874 (11th Cir. 1989).[5]

Given the extensive argument on the appropriate procedure for class proofs of claim that followed the February 25, 2002 hearing, it is clear that the Bankruptcy Court changed its preliminary line of thinking on this point because no such notice was given by the Court, either in the Bar Order or otherwise. [A379]. Most importantly, the Bankruptcy Court deleted the prohibition on class proofs of claim that had been included in the first proposed bar notice in its final Bar Date Order. [A371-378; A379-385].

Third, following the February 25, 2002 hearing, counsel for another pre-petition class action filed a motion seeking permission to file a class proof of claim. As was made clear, this motion was put forth on behalf of all property damage claimants. [B.Dk. 1912, pp. 109-110]. Grace reacted to this motion with a letter to the Court in which it urged the Court to follow

---

[5] Debtors' counsel acknowledged that permission to file a class proof of claim was not necessary under the Bankruptcy Rules. [B.Dk. 1793, pp. 104-105] ("the way it was done in [*In re: First Interregional Equity Corp.*] is pretty much what I'm going to say. She set the bar date. All of the claims came in. All of the claims – individual claims as well as the class proof of claims came in. . . . we propose that after the bar date passes and you have the individual claims as well as having the proposed class proof of claim, you then take up the question of whether to allow . . . the class proof of claims to be used"); [Letter of David Bernick to the Honorable Judith K. Fitzgerald, 3/27/2002] ("This sequence – bar date is set, claims are filed, bar date passes and class certification is then heard last of all – is reflected in the ZAI claimants own citations. Grace understands that it is also being followed by Judge Newsome in the *Armstrong* case. This sequence also has the further virtue of being correct under the law. Rule 23 is not even applicable until claims are filed and objected to."); *see also,* [B.Dk. 1912, 104-107, 113-114].

*American Reserve* and *Interregional*. [Letter from David Bernick to the Honorable Judith K. Fitzgerald, 3/27/02]. Specifically, Grace took the absolute position that "Rule 23 is not even applicable until claims are filed and objected to." [Id]

This motion next came before the Bankruptcy Court on March 18, 2002. As was the case at the February 25, 2002 hearing Anderson's counsel was in attendance. The Court immediately told the parties that while it had not focused on the class proof of claim motion which had just been filed, it almost had to decide "whether the class proof of claim concept is viable". [B.Dk. 1912, pp. 54] The Court went on to suggest that the parties could agree to a process involving a class proof of claim on behalf of all the claimants, "whoever they may be." [Id, p. 56].

Faced with the prospect of having the Bankruptcy Court decide all property damage liability issues in a certified class action, the Debtors' responded that the consequences of such a decision would "create an enormous economic dynamic to the case." [Id, p. 58]. Grace went on to argue that "the fastest way to get to where we have to go is to establish that Bar Date, have the claims come in- including what I'll describe here as the class proof of claim." [Id]

Though the Court rejected that approach because of the notice problems that it would create, it continued to push its view that the property damage issues could be dealt with in a common issues trial. [Id, pp. 59-62]. The Court then suggested using the two existing state court classes, "State of Washington and the other in South Carolina [Anderson]" which could file class proofs of claim. [Id, p. 61]. Grace's counsel acknowledged that *Anderson* "went through a long briefing process" and was "certified on a ex parte basis in the weeks just before [Grace] filed for Chapter 11," and that it dealt with PD issues generally and "may include Zonolite." [Id.]

The Court then noted that, "[s]o, if there is a class or there are classes that have already been certified in State courts, which could file, in quotes, a class proof of claim, they could, at

least, stand to, I guess, be the Rule 42 type trial you're talking about on the scientific side." [Id,

p. 62]. Grace's counsel immediately conceded that "you certainly could do that" [Id.], but

argued against any type of litigation procedure that put class determinations at the head of the

line.

    After several unsuccessful attempts to move the Bankruptcy Court away from the idea

that it should immediately address class issues with the view of trying Grace's property damage

liability in a class/common issues trial, Grace's counsel took a different tack.

> Mr. Bernick: . . . [A]nother possibility, I'll put this out, it's something to think
> about, another possibility is to get some group of individuals . . . we don't certify
> a class, we get some group of individual claims. Your Honor then can deal with
> what the scientific evidence is. And on the basis of that, we go forward. We
> could probably live with something along those lines.
>
> But the whole thrust of what we're saying is let's get the individual claimants in.
> If it's not necessary to go to an elaborate notice process and the time and expense
> and energy, you know, we'd certainly be flexible with that.
>
> If you take the named representatives from the [Barbanti] case, maybe some of
> the other people who are named representatives in the other purported class action
> [Anderson], bring them in, we'll put on the science, we'll litigate the issue.
> You've given something up, a little bit, which is that you've now decided the
> science on the basis where you can't say that it's res judicata. At the same time, I
> think most lawyers looking in would probably be very much influenced by
> whatever it is that Your Honor decided with respect to those claims.

[Id, pp. 73-74].

    As this argument continued, committee counsel for the personal injury claimants, who

shared with Grace the concern that the Bankruptcy Court might create some imprimatur to the

viability of PD class actions, joined the argument:

> Mr. Lockwood: Your Honor, could I just interject something here? I hate to
> sound like a technical nitpicker, but I'm getting a little bit concerned about the
> interplay between the bar dates to the class determinations. . . . We also have
> something called a motion for permission to file a class proof of claim. . . . I don't
> think you need permission to file a proof of claim. You can file – anybody can
> file a proof of claim. It may get objected to, and it may get thrown out on any one

of a number of grounds, but people come in, they file proofs of claim. And, indeed, that's what Judge Newsome determined in connection with the class proof of claim issue in the Armstrong case.

The Court: Well, I don't know about in Armstrong. I mean one of these cases, though, he had had a bar date that already passed.

Mr. Lockwood: I understand that. But I think – but you can file a claim in advance of a bar date and that's one of the things I want to focus on here. People could file a proof of – a class proof of claim on a national class, on a state class, whatever here. The debtors could object to that proof of claim. The people could file individual proofs of claims. The problem we have here is the interplay between the bar date . . . and the class proof of claim.

[Id, pp. 90-91].

After this colloquy, counsel for the Washington class suggested to the Bankruptcy Court that a pre-petition certified class provided an appropriate vehicle to consider these issues. [Id, pp. 97-98]. The Court's response to the remarks of these counsel make it clear that it had **not** finally decided whether to require parties to seek permission to file a class proof of claim:

And I'm not ready to decide it [whether a class proof of claim should be allowed] by a longshot. I tried to tell you that this afternoon that I just wanted to have a discussion as to whether or not this actually was a vehicle which got you all to where you need to be, at least, and if it does, you ought to take advantage of that opportunity.

[Id]. The Bankruptcy Court later reiterated:

However, I'm not sure that at least if this process works for the whole Barbanti concept that it's inappropriate necessarily to do that piece of it on a class basis just for that group of people or maybe for the South Carolina [Anderson], whoever . . . The appropriate groups that are already recognized as class groups may be. I don't know, I don't have a view about it one way or the other. I'm not trying to make decisions about certifying the class, truly I'm not. And I don't want this record to sound like I am because I'm not. I'm not there yet.

[Id, pp. 98-99]. Grace's counsel again reacted to the Court's comments.

Mr. Bernick: Your Honor, if its not a threat, it's a reality. If that class proceeds here, that class is incorporated here. We would have to appeal that.

Your Honor could not bring that class in and simply incorporate the certification, we have to approve that certification. Under Rule 9014, you then have to apply Rule 23, Seventh Circuit *American Reserve* case specifically says if there's a discretionary analysis that has to be done or Rule 23 can be used, you have to determine what the impact on the bankruptcy is going to be. The impact on that bankruptcy would be unmistakable if we would have to take on that class, and we believe we're perfectly entitled to and that we'd be correct in doing so. . . . And, you know, the line in the sand really is class. And I say that again, not by saying, oh, we're going to just mess up the sandbox. It's just – it's the economic reality of the ramifications of that class certification.

[Id., pp. 100-101].

The Bankruptcy Court then agreed to carry these issues over until the next hearing. However, when the Court suggested that there should be a briefing schedule to address the class proof of claim issue, counsel for the personal injury committee again pointed out that a claimant does not need permission to file a class proof of claim and that a contested proceeding was required before the issue could even be raised. [Id., p. 110]. Grace's counsel again responded by pointing out that the Third Circuit had "not yet" adopted *American Reserve*, "but I think that if they were to file a proof of claim, they're always entitled to – safe to file a proof of claim, we can't stop them from doing it. I think that [counsel] is, in fact, right about that." [Id, pp. 106-107]. The PI committee counsel then reiterated:

> Mr. Lockwood: at the risk of sounding like a broken record, why can't they just file a class proof of claim and then move to have it certified? That's the way that we normally do things in the world. You file a complaint and you move to have it certified. This idea that I need permission of the Court to file a proof of claim that's called . . it has not

> The Court: That came up, Mr. Lockwood, I think because that's my understanding of the *Interregional Trucking Company* case that Judge Gambardella had. That's how the issue came up. And I think I suggested on the record that that was the appropriate way to go about this so that we teed the issue up in a contested matter and had an opportunity for the parties to respond to it, I think that's why

[Id, pp. 109-110].

> The Court: . . . I thought that was an appropriate way to tee the issue up because it put everybody on the notice of what the effort was and I thought it got you to the point where it could become a contested matter. . . . I'm not necessarily married to that process. If you simply would prefer that somebody file the class proof of claim and the issues come up, I think it's okay. I think you're going to get to those issues one way or another.

[Id, p. 113]. The hearing ended with Grace's counsel confirming that the process going forward for class proofs of claim would follow the suggestion of Mr. Lockwood. "The same think as Mr. Lockwood said, I suppose if you want, you can also file a class proof of claim, it would then be objected to . . . and at an appropriate time, the Court can decide to take-up the question . . . whether there ought to be a certification." [Id., p. 125].

When the March 18, 2002 hearing had concluded, there was no doubt that the Bankruptcy Court's idea that parties would be required to seek permission before filing class proofs of claims had been abandoned. This was further confirmed when, ten days prior to the April 2002 Omnibus hearing, Grace filed its revised Bar Date Notice Plan, Proof of Claim Forma and Related Materials. [B.Dk. 1926]. This new filing removed all of the language that restricted class proofs of claim from the originally proposed Bar Notice. [B.Dk. 1664, p. 7]. Moreover, the revised Bar Notice contained no notice (as the originally proposed had contained) to PD claimants that they could not rely on a class proof of claim. [B.Dks. 1960, 1963].

The last hearing on the Bar Date Motion took place on April 22, 2002. While discussing the ZAI claims, Mr. Lockwood again stated that,

> Judge Newsome took the position, and I frankly think he was right, that hey, anybody can file a proof of claim and they can file a proof of claim on behalf of the class if they want to and that gets the class in there at least with the sort of place-holder thing and whether or not the class gets certified is the appropriate subject of supplemental briefing and argument and things of that nature.

[B.Dk. 2057, p. 55]. More importantly, the Court again agreed: "Well, it seems to me that Judge Newsome has the right idea." [Id, p. 71]. The Court then executed the Bar Date Order which deleted the prohibition on class claims. [B.Dks. 1960, 1963].

Review of the record in the full context of the numerous hearings and submissions makes it clear that the Bankruptcy Court did not issue any Order requiring a party to file a motion seeking permission to file a class proof of claim prior to the bar date, and, in fact, after hearing Grace's arguments, said the exact opposite. The Bankruptcy Court's later finding in that regard, is error. This appeal should be advanced to challenge the erroneous findings of the lower Court.

### D.    This Appeal Will Not Interfere with the Adjudication of the Proposed Plan of Reorganization or Administration of the Estate

Grace also argues that permitting this appeal at this stage of the proceedings will interfere with the administration of Grace's bankruptcy proceedings – proceedings which Grace contends are winding down due to the recently announced settlement between Grace and the Personal Injury constituents. Grace omits several pertinent facts which belie its position.

First, Grace fails to explain that the plan it seeks to confirm has not been filed yet. Nevertheless, Grace's settlement with the Personal Injury constituency already addresses the post-confirmation payment of traditional property damage claims. Indeed, the Term Sheet that has been disclosed calls for 100% payment of allowed traditional property damage claims. [Exhibit 1, p. 3]. Having successfully negotiated the treatment of asbestos property damage claims with the primary competing Personal Injury constituency, Grace can hardly claim that the prosecution of this appeal would seriously interfere with plan negotiations.

Additionally, Grace neglects to inform this Court that only recently did it seek to impose a bar date on Zonolite Attic Insulation claims ("ZAI claims") for purposes of claim estimation [B.Dk. 18328] and that the Anderson Class that was certified in South Carolina state court

includes ZAI. [B.Dk. 9349, Speights & Runyan Exhibit]. The ZAI claimants have moved for class certification in the Bankruptcy Court. [B.Dk. 18324]. The Bankruptcy Court has yet to rule on any of these matters. With all of this still pending, there is little merit to the suggestion that allowing this appeal will further interfere with the administration of the bankruptcy case.

## II.     Conclusion

Prior to but with the threat of Grace's Bankruptcy Petition and after nine years of contentious litigation, the Circuit Court of South Carolina certified a state-wide class action as to Grace. This Order was entered after two separate rounds of briefs and a two day evidentiary hearing. The Order was left in place after another round of briefs and another hearing.

Anderson moved for class certification in the bankruptcy case within six weeks of Grace filings its claim objections. [B.Dk. 10014]. The timing of Anderson's motion was appropriate, both under the existing case law, *See, In re: Charter Company,* 876 F.2d 866 (11th Cir. 1989), and in the context of this bankruptcy:

> The Court: ... I thought that was an appropriate way to tee the issue up because it put everybody on the notice of what the effort was and I thought it got you to the point where it could become a contested matter.
>
> I'm not necessarily married to that process. If you simply would prefer that somebody file the class proof of claim and the issues come up, I think it's okay. I think you're going to get to those issues one way or another.

[Id, p. 113]. Shortly after filing its motion for class certification in 2005, Anderson sought discovery from Grace and permission to lift the automatic stay for the sole purpose of obtaining the record from the South Carolina Court, which had been partially sealed prior to Grace's Bankruptcy Petition. [B.Dks. 11413]. Grace fought both of these requests for the better part of a year, until the Court finally allowed some discovery and the retrieval of the South Carolina record in late 2006 and 2007. [B.Dks. 13388]. The class certification hearing was finally set for

July 5, 2007. The Bankruptcy Court denied class certification on May 29, 2008. [B.Dk. 18821],

in spite of specifically recognizing the Anderson class in the U. S. Gypsum, U. S. Mineral and

Federal Mogul bankruptcies.[6] It did so "with prejudice" in a final appealable order.

This appeal may be inconvenient to the Debtors. But failing to allow this appeal to go

forward at this time threatens to terminate the rights of hundreds to thousands of South Carolina

property damage claimants, who had every right to rely upon the pre-petition class certification

to preserve their claims up and until the Bankruptcy Court terminated those rights when it denied

class certification "with prejudice." This appeal should be allowed to go forward.

DATED: July 7, 2008

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:        loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile: (803) 943-4599

*Counsel for Anderson Memorial Hospital*

---

[6]The Anderson class was also specifically recognized by the Honorable Paul Glenn in *In re: Celotex Corp.*, Case Nos 90-10016-8G1 and 90-10017-8G1 in an April 21, 2008 Order.

# EXHIBIT 1

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# EX–99.2

**EX–99.2**
**8–K Filed on 04/07/2008 – Period: 04/06/2008**
File Number 001–13953



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

Exhibit 99.2

W. R. GRACE & CO., et al.
CASE NO. 01−1139 (JFK)

TERM SHEET FOR RESOLUTION OF
ASBESTOS PERSONAL INJURY CLAIMS

    This Term Sheet sets forth certain of the principal terms and conditions under which the Debtors, the Official Equity Security Committee, the Official Committee of Personal Injury Claimants ("ACC") and the Future Claimants Representative ("FCR") in the above−captioned Chapter 11 cases are prepared to file a plan of reorganization ("Plan") as co−proponents providing for the resolution of all asbestos personal injury claims and liabilities, including without limitation all asbestos personal injury claims pending at the filing date of the Chapter 11 cases and those arising subsequent thereto (collectively, "Asbestos PI Claims"). This Term Sheet also sets forth the proposed treatment of other key classes of claims asserted in the Chapter 11 cases. This Term Sheet has been produced for settlement purposes only and is subject to the provisions of Rule 408 of the Federal Rules of Evidence.

## I.    Treatment of Claims

### A.    Asbestos PI Trust

All Asbestos PI Claims will be channeled to a trust (the "Asbestos PI Trust") that is established in accordance with Section 524(g) of the United States Bankruptcy Code. The Asbestos PI Trust will pay claims from trust assets in accordance with a trust agreement and trust distribution procedures established by the ACC and FCR in connection with the Plan.

**1.    Funding of Asbestos PI Trust at Emergence. On the Effective Date of the Plan, the Asbestos PI Trust shall receive the following, each of which shall be a condition to the Plan becoming effective:**

a.    **Cash Payment:** **$250 million, plus, if the Effective Date occurs after December 31, 2008, interest from January 1, 2009 to the Effective Date accrued at the same rate applicable to Grace's senior debt.**

b.    **Insurance:** **the assignment by W. R. Grace & Co.−Conn. ("Grace") and all of its affiliates to the Asbestos PI Trust, of all insurance policies and all insurance proceeds available for payment of Asbestos PI Claims, effective as of the Effective Date, including without limitation:**

i.    **Any such proceeds from the date hereof of all settlements with insurance companies, and all interest accrued thereon;**

ii.      Any proceeds of the settlement with Equitas held in escrow with all interest accrued thereon;

iii.     Any proceeds of all settlements with all insurance companies under coverage in place agreements or installment payment arrangements where payment has not yet occurred;

iv.     Assignment of and the right to recover on all outstanding insurance policies potentially applicable to personal injury claimants; and

v.      The right to recover from all insolvent insurance estates as to which Grace or its affiliates has made a claim and the proceeds of all payments received by Grace or its affiliates from those insolvent estates after the date hereof, and all interest accrued thereon.

Provided however that Grace is in the process of examining its policies and the foregoing will not affect Grace's separate coverages, if any, for losses not arising from asbestos personal injury claims.

The ACC and FCR (or, after the Effective Date, the Asbestos PI Trust) shall control (and Grace shall cooperate in connection with) any negotiations or legal proceedings related to the underlying policies or settlement agreements applicable to Asbestos PI Claims.

c.      **Warrant**:  a warrant for 10 million shares of W. R. Grace & Co. ("Parent") common stock, exercisable at $17 per share, and expiring one year after the Effective Date.

d.      **Cryovac, Inc. Payment**: The consideration contemplated by the Sealed Air Settlement Agreement.

e.      **Fresenius Medical Care Payment**:  The proceeds of the payment contemplated by the Fresenius Settlement Agreement.

2.      **Deferred Payment Obligations:  Grace shall make additional payments to the Asbestos PI Trust over a 15 year period as follows:  five annual payments of $110 million commencing on January 2, 2019; and 10 annual payments of $100 million commencing on January 2, 2024.  Such payment obligations shall be subordinate to any bank debt or bonds outstanding and shall be guaranteed by Parent or any successor ultimate parent entity of Grace.  Such guaranty shall be secured by an obligation of Parent to issue to the Asbestos PI Trust, in the event an additional payment is not made, the number of shares of Parent common stock which, when**

added to the number of shares of common stock issued and outstanding as of the Effective Date, shall constitute 50.1% of the voting shares of Parent as of the Effective Date (such number of shares shall be equitably adjusted for stock splits, stock dividends, recapitalizations, corporate reorganizations or changes in control of Parent after the Effective Date).

## B.  Other Classes

1.  **Administrative Claims: 100% of allowed amount in cash.**

2.  **Priority Tax Claims: 100% of allowed amount in cash.**

3.  **Priority Non−Tax Claims: 100% of allowed amount in cash.**

4.  **Secured Claims: 100% of allowed amount either in cash or by reinstatement.**

5.  **Unsecured Employee Claims (post−retirement health and special pension): 100% of allowed amount by reinstatement.**

6.  **Workers Compensation Claims: 100% by reinstatement.**

7.  **Allowed General Unsecured Claims: 100% of allowed amount plus post−petition interest as follows: (i) for holders of pre−petition bank credit facilities, post−petition interest at the rate of 6.09% from the filing date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly; and (ii) for all other unsecured claims, interest at 4.19%, compounded annually, or if pursuant to an existing contract, interest at the non−default contract rate.**

8.  **Allowed Environmental Claims: 100% of allowed amount in cash.**

9.  **Traditional Asbestos Property Damage Claims:  100% of allowed amount in cash for settled claims.  The Plan shall set forth procedures for the allowance of all Asbestos PD Claims that are disputed as of the Effective Date.**

10.  **ZAI Claims: Unless the Plan Proponents agree otherwise as to the treatment of ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan.  ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.**

**Channeling Injunctions.**  The Plan shall contain injunctions under Sections 524(g) and Section 105(a) of the Bankruptcy Code to protect the Debtors, Cryovac, Sealed Air, Fresenius, their affiliates, officers, directors and employees, and other parties in interest and certain insurers.  The Plan shall also contain such provisions, injunctions and releases

(i) as are necessary to comply with the terms of the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement; and (ii) to the full extent permitted by law, to indemnify, and release all of Grace's officers, directors, employees and professionals, and the members of all official committees, the FCR and their professionals, from any liability on account of claims against Grace, or arising in or in connection with these Chapter 11 cases. The foregoing injunctions, indemnifications and releases shall be at least as extensive as, and consistent with, the injunctions, indemnifications and releases provided for under Grace's Amended Plan currently filed in the Chapter 11 Cases to the extent such latter injunctions, indemnifications and releases are not inconsistent with this Term Sheet.

- **Resolution of Outstanding Issues.**  The parties agree to cooperate in seeking a resolution of outstanding issues material to or not otherwise resolved in connection with the confirmation of a plan of reorganization.

- **Binding Effect.**  This Term Sheet has been approved by all necessary corporate or organizational action of the Board of Directors of Parent and Grace, the ACC, the FCR and the Equity Committee, and shall be binding upon the parties and each of their respective successors and assigns to the fullest extent permitted by applicable law.  The parties shall use their best efforts to incorporate the terms of this Term Sheet into a mutually agreeable plan of reorganization to be filed with the Bankruptcy Court as soon as possible.

## V.    Confidentiality.

**The parties shall treat all negotiations regarding this Term Sheet as confidential.  Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein.  Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Property Damage Claimants.  Grace will provide counsel to the ACC and counsel to the FCR an opportunity to review and comment on any press release relating to this Term Sheet prior to its issuance.**

4

AGREED TO AND ACCEPTED BY:
Dated: April 6, 2008

**THE DEBTORS:**
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases

By:      /s/ Fred Festa
Name:    Fred Festa
Title:   Chairman, President and Chief Executive Officer

**THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

By:      /s/ R. Ted Weschler
Name:    R. Ted Weschler
Title:   Chair of the Committee

**THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS:**
CAPLIN & DRYSDALE, CHARTERED, on behalf of and in its capacity as counsel to the ACC

By:      /s/ Elihu Inselbuch
Name:    Elihu Inselbuch

**THE FUTURE CLAIMANTS REPRESENTATIVE:**
ORRICK, HERRINGTON & SUTCLIFFE LLP, on behalf of and in its capacity as counsel to the FCR

By:      /s/ Roger Frankel
Name:    Roger Frankel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANDERSON MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Appellants, | ) | Civil Action No. 08-00118 (RLB) |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. GRACE & CO., *et al,* | ) | DE Bankr. Case No. 01-01139 (JKF) |
| | ) | DE Bankr. Appeal No. 08-AP-39 |
| Appellees. | ) | |
| | ) | **Re: Appeal D.I. _____** |

**ORDER GRANTING THE**
**MOTION OF ANDERSON MEMORIAL HOSPITAL**
**FOR LEAVE TO FILE REPLY IN SUPPORT OF ITS APPLICATION FOR APPEAL**
**OF ORDER DENYING CLASS CERTIFICATION UNDER FED. R. BANKR. P. 7023**

Upon consideration of the above-referenced motion (the "Motion for Leave to Reply"), it is hereby ORDERED that:

1.    The Motion for Leave to Reply is GRANTED.

2.    Appellant Anderson Memorial Hospital is permitted to file its reply (the "Reply") attached to the Motion for Leave to Reply.

3.    Since the Reply was attached to its Motion for Leave to Reply, the Reply is deemed to have been filed simultaneously therewith, on July 7, 2008.

DATED:_____, 2008                    _____
                                                    Honorable Ronald L. Buckwalter
                                                    United States District Court Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDERSON MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Appellants, | ) | Civil Action No. 08-00118 (RLB) |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. GRACE & CO., *et al*, | ) | DE Bankr. Case No. 01-01139 (JKF) |
| | ) | DE Bankr. Appeal No. 08-AP-39 |
| Appellees. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I, Christopher D. Loizides, hereby certify that on July 7, 2008, I did cause to be served

copies of the foregoing MOTION OF ANDERSON MEMORIAL HOSPITAL FOR

LEAVE TO FILE REPLY IN SUPPORT OF ITS APPLICATION FOR APPEAL OF ORDER

DENYING CLASS CERTIFICATION UNDER FED. R. BANKR. P. 7023 on the parties listed

and in the manner indicated on the attached service list.

DATED: July 7, 2008

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

080703 91445.DOC

**SERVICE LIST**

**VIA FIRST CLASS MAIL**

Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Timothy P. Cairns, Esquire
PACHULSKI STANG ZIEHL & JONES LLP
919 No. Market Street, 17th Floor
Wilmington, DE  19801

David M. Bernick, Esquire
Janet S. Baer, Esquire
Lisa Esayian, Esquire
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601

James J. Restivo, Jr., Esquire
Douglas E. Cameron, Esquire
Traci S. Rea, Esquire
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219

David B. Siegel
W.R. GRACE & CO.
7500 Grace Drive
Columbia, MD  21044

Teresa K. D. Currier, Esquire
BUCHANAN INGERSOLL & ROONEY
1000 West Street, Suite 1410
Wilmington, DE  19801

Marla R. Eskin, Esquire
CAMPBELL & LEVINE LLC
800 No. King Street, Suite 300
Wilmington, DE  19801

Michael R. Lastowski, Esquire
DUANE MORRIS LLP
1100 No. Market Street, Suite 1200
Wilmington, DE  19801

David M. Klauder, III, Esquire
Office of the United States Trustee
844 No. King Street, Room 2207
Wilmington, DE  19801

Lewis Kruger, Esquire
STROOCK & STROOCK & LAVAN
180 Maiden Lane
New York, NY  10038-4982

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY  10152-3500

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC  20005

Thomas M. Mayer, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036

Roger Frankel, Esquire
Richard H. Wyron, Esquire
ORRICK HERRINGTON & SUTCLIFFE LLP
The Washington Harbour
3050 K Street, N.W., Suite 200
Washington, DC  20007-5135

John C. Phillips, Jr., Esquire
PHILLIPS GOLDMAN & SPENCE PA
1200 No. Broom Street
Wilmington, DE  19806

Scott L. Baena, Esquire
Jay M. Sakalo, Esquire
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
Wachovia Financial Center
200 So. Biscayne Bl., Suite 2500
Miami FL  33131

Theodore J. Tacconelli, Esquire
FERRY JOSEPH & PEARCE PA
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899-1351

Tim Arellano
Anderson Memorial Hospital d/b/a AnMed Health
800 Fant Street
Anderson, SC  29261